# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 17-2019

———————————————

Norman Whitney, Sr.

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; Shelley Sharp, in both her Official Capacity as a
Corrections Officer and Individually

*Defendants - Appellees*

————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: March 14, 2018
Filed: April 12, 2018

————————

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

————————

ERICKSON, Circuit Judge.

Norman Whitney, Sr. ("Whitney Sr.") brought this action after his son, a pretrial detainee who had recently been treated for suicidal thoughts, hanged himself in a cell that was monitored by closed-circuit television. Whitney Sr. asserted state law wrongful death claims and federal claims under 42 U.S.C. § 1983 against

correctional officer Shelley Sharp and the City of St. Louis. The district court[1] dismissed the federal claims because the complaint failed to allege that Sharp knew that Whitney Sr.'s son presented a suicide risk and because the City could not be liable without an underlying constitutional violation. The district court declined to exercise supplemental jurisdiction over the state law claims. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

On August 4, 2014, after being arrested, Norman Whitney, Jr. ("Whitney") was taken to the St. Louis University Hospital for treatment of an irregular heartbeat.[2] While there, he attempted to escape and said that he wanted the police to take his life so that he would not be sent back to prison. He was evaluated and determined to be suicidal. After being treated by psychiatry and showing improvement, he was released as fit for confinement and transported to the St. Louis City Justice Center on August 8, 2014.

On August 10, 2014, Whitney was moved to a medical unit in the Justice Center because he was suffering from a number of medical conditions, including (1) detoxification from heroin use, (2) congestive heart failure, (3) hypertension, and (4) diabetes mellitus.[3] Sharp was assigned to monitor Whitney in his cell via closed-

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[2]The factual background is taken from the complaint and the medical examiner's report that was attached to and incorporated by the complaint.

[3]The complaint alleges that Whitney was placed on medical observation "because of his health, heroin detox, he was a 'flight risk,' and the aforesaid suicidal thoughts." The incorporated medical examiner's report, however, states that Whitney was not on suicide watch.

circuit television. Sharp last saw Whitney pacing by the shower area at 9:05 a.m. Sometime within the next fourteen minutes, she discovered that he had hanged himself with a ligature made from his ripped hospital gown.

After Whitney's death, an unnamed medical practitioner at the Justice Center came forward to report that Whitney had mentioned having suicidal ideation to him. There is no evidence that this information was relayed to Sharp or other jail personnel prior to Whitney's death. Whitney denied suicidal ideation when asked by other correctional officers.

Whitney's father brought an action in Missouri state court against Sharp, in both her official and individual capacities, as well as the City of St. Louis, asserting claims under 42 U.S.C. § 1983 and the Missouri wrongful death act. The action was removed to federal court pursuant to 28 U.S.C. § 1331. The complaint alleges that Sharp caused Whitney's death through her deliberate indifference by failing to: (1) "adequately monitor Whitney;" (2) "timely provide adequate medical care to his serious suicidal medical condition and need;" and/or (3) "timely intervene to rescue Whitney while he was committing suicide in the CCTV cell." The claim against the City is based on the City's failure "to have a policy of constant surveillance under the circumstances of Whitney's incarceration."

Sharp and the City filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motions, dismissed with prejudice the § 1983 claims against both defendants, and dismissed without prejudice the state law claims against both defendants.

## II. Discussion

Whitney Sr. claims the district court erred (1) when it held that the complaint did not adequately plead deliberate indifference in his claim against Sharp, and (2)

when it held that the City could not be liable under § 1983 in the absence of a constitutional violation by Sharp. We review the grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*. Hughes v. City of Cedar Rapids, 840 F.3d 987, 994 (8th Cir. 2016) (citing Sparkman Learning Ctr. v. Ark. Dep't. of Human Servs., 775 F.3d 993, 997 (8th Cir. 2014)). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### A. Deliberate Indifference Claim Against Sharp

Prisoners have a "clearly established constitutional right to be protected from the known risks of suicide and to have [their] serious medical needs attended to." Yellow Horse v. Pennington Cty., 225 F.3d 923, 927 (8th Cir. 2000) (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)). The Eighth Amendment prohibits jail officials from acting with deliberate indifference towards risks of suicide. Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003) (citing Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000)). The Fourteenth Amendment extends this protection to pretrial detainees. Id. (citing Hott v. Hennepin County, 260 F.3d 901, 905 (8th Cir. 2001)).

Our precedent establishes that "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis."[4] Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014) (citing Scott v. Benson, 742 F.3d 335, 339–40 (8th Cir. 2014)). To prevail on his deliberate indifference claim, Whitney Sr.

---

[4]Whitney Sr. asserts that the Supreme Court's conclusion in Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015), that "the relevant standard is objective not subjective" should apply here. Kingsley does not control because it was an excessive force case, not a deliberate indifference case.

must show that (1) Sharp had actual knowledge that Whitney had a substantial risk of suicide and (2) Sharp failed to take reasonable measures to abate that risk. Coleman, 349 F.3d at 538.

The district court correctly concluded that the complaint fails to allege facts establishing the subjective prong of the deliberate indifference claim. The incorporated medical examiner's report mentions that an unnamed medical practitioner at the Justice Center knew that Whitney was having suicidal thoughts, but nowhere does the complaint allege that this information was relayed to Sharp. The complaint contains a legal conclusion that Sharp was deliberately indifferent but fails to make any allegation about Sharp's knowledge. This conclusory statement does not save the complaint absent any allegation of knowledge. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Dismissal of the § 1983 claim against Sharp was proper under Rule 12(b)(6).

### B.    Monell Liability

In his § 1983 claim against the City, Whitney Sr. alleges that the City violated Whitney's rights by failing to have a policy of constant surveillance in place at the Justice Center. Under Monell, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an 'official municipal policy.'" Corwin v. City of Independence, 829 F.3d 695, 699 (8th Cir. 2016) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). It follows that, absent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City. See Malone v. Hinman, 847 F.3d 949, 955 (8th Cir. 2017) ("Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or *Monell* liability on the part of Chief Thomas and the City."); Sitzes v. City of W. Memphis, 606 F.3d 461, 470 (8th Cir. 2010) (agreeing with district court that plaintiffs' claims "could not be sustained absent an underlying

constitutional violation by the officer"); Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or Monell . . . municipal liability.").

Whitney Sr. contends that the district court was wrong when it concluded that absent a constitutional violation on the part of Sharp, the City had no Monell liability. He claims that Monell liability is still possible because other jail personnel who were not named as defendants "arguably fulfilled a 'do nothing' Jail policy vis-a-vis an inmate committing suicide." This claim fails for the same reason as the claim against Sharp. The complaint alleges that unnamed jail personnel were deliberately indifferent while Whitney was hanging himself. Tellingly, the complaint does not allege any facts to support this legal conclusion. The surmise of the allegation is unsupported by sufficient factual allegations. There is, for example, no claim that any identifiable jail official had knowledge that Whitney was in the process of committing suicide or even that a particular jail official suspected that he might be committing an act of self-harm. In short the complaint fails to allege any constitutional violation arising out of a municipal policy that would expose the City to Monell liability.[5]

## III.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

[5]We also note that a failure to implement a specific policy does not equate to a failure to adopt a constitutionally adequate policy. See Szabla v. City of Brooklyn Park, 486 F.3d 385, 392 (8th Cir. 2007) (noting that the appellant contended that the City should have had a specific policy regarding the use of police dogs and explaining that "a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability").