# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1821

———————————————

Leroy Leftwich, trustee of the statutory class of next of kin to Cameron Leftwich, decedent

*Plaintiff - Appellant*

v.

County of Dakota, et al.

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: February 16, 2021
Filed: August 19, 2021

——————————

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

After Cameron Leftwich committed suicide in the Dakota County, Minnesota jail in October 2016, his father, Leroy Leftwich, as trustee for Cameron's next of kin, filed this action against Dakota County, county deputies Caleb Kocher and Kent Themmes, county social worker Cody Swanson, the City of Eagan, and Eagan police officers Jennifer Wegner, Brian Rundquist, and Brian Rezny. The Complaint asserted

§ 1983 claims for failure to provide adequate medical care and failure to train, and wrongful death claims under Minnesota law. See Minn. Stat. § 573.02. The district court[1] granted defendants summary judgment on all claims. Leftwich appeals the grant of summary judgment and denial of his motions to amend. Reviewing the grant of summary judgment *de novo* and the denial of motions to amend for abuse of discretion, we affirm.

## I.  Factual and Procedural Background

On October 27, 2016, a nurse at a hospital in Burnsville, Minnesota contacted 911 to request that an Eagan officer respond to the emergency room where a woman with a broken jaw requiring surgery stated that her boyfriend (Cameron) had punched her in the face at an Eagan residence. The nurse said the boyfriend and his mother were in the emergency room lobby. Defendant Wegner, at her desk, spoke to the injured woman, who said she had been assaulted by Cameron and provided a physical description. Wegner was not present at the hospital and did not speak with Cameron. She contacted Burnsville police and requested they arrest Cameron for assault. Burnsville police responded to the hospital and then transferred custody of Cameron to Eagan police officer Rundquist, who was dispatched by Wegner to the emergency room to pick up the assault suspect. Cameron admitted to Rundquist that he punched his girlfriend out of anger and made statements regarding anger toward his mother. Rundquist arrested Cameron, placed him in a squad car, and drove him to the Dakota County jail -- a drive of approximately 30 minutes.

Wegner also dispatched Officer Rezny to the hospital emergency room to obtain statements regarding the assault from Jennifer Halsey, the assault victim, and Charlene Pinckney, Cameron's mother, who witnessed the assault. Halsey told Rezny

---

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

that Cameron often got mad at her and that she thought he might be bipolar and manic. Pinckney told Rezny Cameron was angry, "hurtful to himself," had "mental issues," and when angry had recently hit himself in the head with the claw-end of a hammer and jumped from a moving car. Rezny testified he asked Pinckney if she was concerned about Cameron killing himself. Pinckney testified she did not remember Rezny asking whether Cameron was suicidal.

During the drive to the jail, Cameron told Rundquist he probably needed anger management and was trying to turn his life around for his daughter. He made no mention of suicide or self harm. Defendant Wegner radioed Rundquist while he was driving Cameron to the jail to advise she had prepared and sent paperwork required by the Dakota County jail before they would accept an arrestee for detention -- an Offender Tracking Form (OTF) (a jail intake form prepared by the jail) and a Victim Notification card. Sergeant Wegner checked the "no'" box on OTF questions asking if Cameron had mental health issues or was suicidal. She testified she had no interaction with Cameron and answered "no" because the officers, particularly Rundquist, would have told her if they had any information Cameron "was suicidal."

Arriving at the jail, Rundquist transferred custody of Cameron to jail deputies and defendant Kocher began the jail intake. Rundquist spoke briefly with jail staff. He heard Cameron answer "no" when Kocher asked if Cameron had attempted suicide or tried to do serious harm to himself, and whether he had a plan to commit suicide or was thinking about harming himself. Cameron answered "yes" when asked if he had a mental illness. Asked by Kocher to explain, Cameron said he had "dual disorder." Rundquist did not express any concern about Cameron's mental health. Kocher testified his practice is to observe inmates to assess whether their behavior or demeanor suggests self-harm, even if they deny having those thoughts. Kocher "did not have a feeling that [Cameron] was going to hurt himself." Defendant Themmes completed the booking process. He asked whether Cameron had suicidal thoughts

or plans. Cameron again said no. Deputy Themmes also observed that Cameron's behavior did not suggest there was anything to be concerned about.

A Dakota County contract nurse reviewed Cameron's inmate form, saw that he scored a "1" because he self-reported a dual disorder, and scheduled a visit with him for October 30, within 72 hours of booking as the correctional contract required. Defendant Swanson was a county social worker who worked two hours at the jail each weekday to help inmates find health and social services after their release. His practice was to review the intake questionnaires and meet with inmates like Cameron who scored a "1" within 24 hours. He did not have time to meet with Cameron on October 28 because of limited hours and other duties.

The next morning, October 28, county probation officer Hugh Woodford conducted a bail evaluation. Cameron told Woodford he was previously diagnosed with depression, anxiety, and learning disabilities. Woodford asked if Cameron needed immediate health services. Cameron said no. Jail staff was not privy to this evaluation. Cameron went to the Dakota County courthouse later that day, bail was set, and he returned to the jail.

At 9:51 that evening, deputies moved Cameron to a cell in the housing unit where well-being checks are required every 25 minutes. During a well-being check, Cameron tapped on his window and asked Deputy Bryan Olson about arranging for a visitor the next day. During a well-being check at approximately 11:35 p.m., Deputy Olson saw Cameron lying on his bed. At the next well-being check around 11:56 p.m., Olson discovered Cameron hanging from the top of his bunk. Life-saving efforts were unsuccessful, and he was pronounced dead.

Leftwich filed this action in April 2018. He alleged § 1983 failure to provide adequate medical care claims against all defendants. He alleged § 1983 failure to train claims against the City of Eagan and Dakota County and state law wrongful

death claims against the City and Sergeant Wegner and against the County and Swanson. The pre-trial scheduling order set deadlines of October 29 to serve motions and to amend pleadings and January 2, 2019 to conclude discovery. On January 2, Leftwich moved to amend the scheduling order and for leave to file an amended complaint. After a hearing and supplemental briefing, the magistrate judge[2] denied Leftwich's motions, finding Leftwich lacked good cause because he elected to wait until after the deadline to file an amendment before deposing even a single fact witness.[3]

Leftwich moved for partial summary judgment on his § 1983 claims; defendants moved for summary judgment on all claims. The district court granted summary judgment in favor of defendants on all claims. The court concluded that Leftwich failed to clearly and explicitly assert § 1983 claims against the individual defendants acting in their individual capacities. The court further found that the police officers and jail deputies had no actual knowledge that Cameron was a substantial risk for suicide and did not act with deliberate indifference to a suicide risk. Therefore, the City and County could not be held liable for failure to train. The court dismissed the wrongful death claim under Minnesota law, concluding that (i) Sergeant Wegner and Swanson were entitled to common law immunity for their discretionary conduct and therefore the City and County had vicarious immunity; and

---

[2] The Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

[3] Before the magistrate judge ruled, Leftwich filed a second suit adding additional individuals and alleging the § 1983 claims his motion to amend was seeking to add. After the magistrate judge ruled, Leftwich moved to consolidate the two suits. Adopting the magistrate judge's recommendation, the district court denied the motion. Leftwich's Notice of Appeal included the order denying the motion to consolidate. But he failed to address this order in his statement of the issues presented or in the argument section of his brief, so we do not consider it. See Fed. R. App. P. 28(a)(5) and (8).

(ii) the County's policy to provide health services within 72 hours of an inmate's arrival is a planning decision protected by Minnesota statutory immunity. Finally, the court affirmed the magistrate judge's orders denying Leftwich's motion to amend the scheduling order and file an amended complaint. Leftwich appeals the grant of summary judgment and the denial of his motions to amend.

## II. § 1983 Claims

Leftwich asserted two § 1983 claims: (1) failure to provide adequate medical care against all the defendants and (2) failure to train against the City and County. He appeals the district court's grant of summary judgment to all defendants on all claims. We review the grant of summary judgment *de novo,* viewing all evidence in the light most favorable to Leftwich as the nonmoving party. A.H. v. St. Louis County, 891 F.3d 721, 727 (8th Cir. 2018).

Municipal entities such as the City of Eagan and Dakota County may be liable under § 1983 for constitutional violations if a "violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." Corwin v. City of Independence, 829 F.3d 695, 699 (8th Cir. 2016), citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) and City of Canton v. Harris, 489 U.S. 378, 389 (1989). Here, Leftwich does not allege that any City or County policy or custom "itself violated federal law, or directed or authorized the deprivation of federal rights." Bd. of Cnty Com'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 406 (1997). Thus, the failure to train claims require a showing of deliberate indifference. See Szabla v. City of Brooklyn Park, 486 F.3d 385, 390 (8th Cir. 2007) (en banc). There can be no § 1983 or Monell liability absent a constitutional violation by a City or County employee. See Whitney v. City of St. Louis, 887 F.3d 857, 861 (8th Cir. 2018).

In a jail suicide case, municipal officials violate the Eighth Amendment prohibition on cruel and unusual punishment if they are deliberately indifferent to serious medical needs, including the risk of suicide. A.H., 891 F.3d at 726.[4] Deliberate indifference is a rigorous standard, "akin to criminal recklessness, something more than mere negligence; a plaintiff must show that a prison official actually knew that the inmate faced a substantial risk of serious harm and did not respond reasonably to that risk." Id. (cleaned up). It requires "a showing that the official was subjectively aware of the risk." Perry v. Adams, 993 F.3d 584, 587 (8th Cir. 2021), citing, Farmer v. Brennan, 511 U.S. 825, 829 (1994). When the claim is that "jailers fail[ed] to discover the decedent's suicidal tendencies," as in this case, the issue is whether a defendant "possess[ed] the level of knowledge that would alert him to a strong likelihood that [Cameron] would attempt suicide." Bell v. Stigers, 937 F.2d 1340, 1343-44 (8th Cir. 1991) (cleaned up), overruled on other grounds by Farmer, 511 U.S. at 829. A showing of negligence is insufficient. See Lambert v. City of Dumas, 187 F.3d 931, 937 (8th Cir. 1999). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

The district court concluded that the municipalities were not liable because none of their officials -- including the individual defendants -- had actual knowledge of or were deliberately indifferent to a substantial risk that Cameron would commit suicide. On appeal, Leftwich argues the court failed to consider all the facts presented and decided disputed issues of material fact, citing as relevant cases four district court decisions from outside the Eighth Circuit.

---

[4]"Pretrial detainees are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment." Id. (quotation omitted).

Applying the correct summary judgment standard, the district court properly analyzed the actual knowledge and deliberate indifference issues separately for the individual City and County defendants:

> [N]o reasonable jury could find that the City's police officers had actual knowledge or acted with deliberate indifference to a substantial suicide risk. While Cameron mentioned anger and mental health issues to Officer Rundquist, he also spoke of the future and about turning his life around for his young daughter. Indeed, Cameron never mentioned self-harm or suicide to Officer Rundquist. Officer Rezny determined that Charlene's statements were consistent with anger management issues. . . . The facts do not show that either officer knew, or must have known, that Cameron had a substantial suicide risk and explain why neither expressed any concerns to Sergeant Wegner, who filled out the OTF.

> Similarly, no reasonable jury could find that the County officials knew or must have known that Cameron had a substantial suicide risk. Being arrested for assault and being detained until a bail hearing are commonplace in many county jails and do not give rise to an inference of a substantial suicide risk. See Hott [v. Hennepin Cty, Minn], 260 F.3d [901,] 905 [8th Cir. 2001]. Nor does dual disorder give rise to such an inference; dual disorder meant that Cameron had both mental health and chemical dependency diagnoses. Finally, Cameron answered "no" to Deputy Kocher's questions assessing whether he was at a risk of suicide. Indeed, Deputy Kocher stated that Cameron behaved normally during the intake process and that he had facilitated a suicide watch for a different inmate who had answered "no" because of that inmate's behavior.

After careful review of the summary judgment record, we agree. The information Rezny was provided in investigating a domestic assault showed that Cameron was prone to anger and could be violent when angry; that his girlfriend -- the assault victim -- thought he might have a mental health issue; and that his mother

-8-

said he had mental issues when angry.[5] There is no evidence that Charlene expressed concern to Rezny about Cameron killing himself. This did not provide actual knowledge that Cameron posed a substantial risk of suicide or serious self-injury. Officer Rundquist, who observed Cameron for over an hour, testified that nothing about Cameron's behavior or comments alerted him to anything more than anger issues for which he needed assistance (having just committed domestic assault). There is no evidence Sergeant Wegner had actual knowledge, and she had no obligation to investigate before completing an OTF form that had to be quickly prepared and submitted to the County jail staff for their intake and booking process.

Nor is there evidence that the individual County defendants, Deputies Kocher and Themmes, had actual knowledge of a risk of suicide based on information they obtained and their observation of Cameron during the intake process. They separately asked Cameron whether he was suicidal or had suicidal tenancies. Cameron answered "no" to both.

Because Leftwich failed to show that any of the individual defendants (or any other relevant official) was deliberately indifferent to and "subjectively aware of the risk" of suicide, there was no underlying constitutional violation, and the individual defendants as well as the City and the County were entitled to summary judgment on the § 1983 claims. Therefore, we need not consider whether the district court erred in also determining that Leftwich's complaint failed to include the required notice that the individual defendants were being sued in their individual as well as their official capacities. See Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999), controlling cases that Leftwich's briefs did not even acknowledge.

---

[5]Leftwich argues the court improperly credited Rezny's testimony over Pinckney's in granting summary judgment on this issue. We need not decide whether it was proper for the district court to consider Rezny's "no concern" comment.

### III. The Minnesota Wrongful Death Claims

The district court granted summary judgment dismissing Leftwich's Minnesota state law wrongful death claims, concluding that Wegner and Swanson had public official immunity for exercising discretionary judgment, and that Dakota County had public entity immunity because the challenged policy was a planning-level discretionary decision. Leftwich argues the district court erred in granting immunity because the duties of Wegner and Swanson were ministerial, and the County is not entitled to immunity because it failed to implement its stated policy regarding mental health assessments of inmates who score "1" or higher on the intake health screening form. He makes no argument the court erred in granting the City public entity immunity so we need not address that issue.

Public official immunity is a question of law reviewed *de novo*. Vassallo ex rel. Brown v. Majeski, 842 N.W.2d 456, 462 (Minn. 2014). Under Minnesota law:

> [A] public official charged by law with duties which call for the exercise of his or her judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong. . . . When determining whether conduct is discretionary or ministerial, we focus on the nature of the act. A discretionary duty involves individual professional judgment that necessarily reflects the professional goal and factors of a situation. By contrast, a ministerial duty is one that is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.

Id. at 462. (cleaned up). After stating these governing principles, the district court concluded that the challenged conduct of Sergeant Wegner and county social worker Swanson were discretionary duties. As to Wegner, the court explained:

> The City's police officers have a ministerial duty to fill out an OTF for every arrestee before the arrestee arrives at a jail. . . . However, this

-10-

ministerial duty is limited to providing information related to the purpose of the OTF. . . . Sergeant Wegner fulfilled her ministerial duty by sending Cameron's OTF to the Jail with the necessary information for the prosecuting authority, including his biographical and arresting charge information. Any additional mental health information Sergeant Wegner provided on the OTF was discretionary conduct.

We agree. Sergeant Wegner testified the form's purpose is to provide basic information about an arrestee, such as details about the crime being booked and his or her name and date of birth. There was no policy or state law that required Sergeant Wegner to conduct a mental health assessment before answering. Eagan Police Chief Roger New, the City's designated representative, testified that answering mental health questions on the form was "subjective" and could be based on a number of factors such as personal interaction, the subject's prior known history, and information from other officers.

As to social worker Swanson, the court explained:

[Swanson testified he was "trained"] to see an inmate who scored a one or higher on the Jail intake questionnaire within twenty-four hours of incarceration. . . . But the way Swanson was "trained" to do his job does not create an "absolute, certain, and imperative" duty. Plaintiff does not cite to any Minnesota statute or Jail policy creating a mandatory duty for Swanson to see an inmate scoring a one or higher within twenty-four hours of incarceration. Swanson's conduct was thus discretionary. . . . Plaintiff provides no argument in favor of, and the Court finds no support in the record for . . . a finding [that Swanson acted] willfully or maliciously.

Again, we agree. On appeal, Leftwich argues Swanson's testimony that, as a Dakota County Social Services Department employee, he was "trained" to meet with these inmates within 24 hours is proof of a mandatory county policy. We agree with the district court that testimony regarding an employee's "training" does not, standing

-11-

alone, establish that training is an "absolute, certain, and imperative" ministerial duty. For example, "[t]he requirement that the driver of an authorized emergency vehicle shall slow down as necessary for safety, plainly does not impose an absolute duty upon the driver of an emergency vehicle to slow down in every situation . . . . This is a textbook example of the exercise of discretion." Vassallo, 842 N.W.2d at 463 (cleaned up). Leftwich's further argument there was sufficient evidence of malice is frivolous. Accordingly, the court correctly found Swanson has official immunity. Therefore, the County is entitled to vicarious official immunity. See id. at 465.

The district court further concluded that the County is entitled to public entity or statutory immunity because the County's decision to have a mental health assessment within 72 rather than 24 hours of incarceration is a policy making, not an operational government decision. Leftwich challenges this ruling on appeal, but his argument is incoherent. The distinction between official immunity and statutory immunity under Minnesota law "has led to more than a little confusion." Janklow v. Mn. Bd. of Examiners, 552 N.W.2d 711, 716 (Minn. 1996). Leftwich does not even clarify which doctrine he is challenging. In either event, the district court did not err; "actions involving policy development or other exercise of discretion are generally immune." Id. It is undisputed that Swanson was not a licenced mental health professional who could provide a "proper" mental health screening; his job was connecting inmates to such providers *post release*. Nor is there evidence the Social Services Department had a policy that required Swanson, a social worker, to visit Cameron within 24 hours for any purpose, let alone to provide a mental health assessment. The undisputed evidence is that the County contracted with MEnD Correctional Care for the provision of mental health services to inmates.[6]

---

[6]A contract nurse scheduled a visit with Cameron, a detainee who scored a 1 or higher, within 72 hours, consistent with County policy. The policy requires a nurse to visit an inmate within 24 hours if the inmate discloses or displays "significant mental health" issues. Leftwich has not challenged the nurse's determination that Cameron's self-disclosed dual disorder was not a "significant mental health issue."

## IV. The Motions to Amend

The district court affirmed the magistrate judge's order denying Leftwich's motions to amend the scheduling order and file an amended complaint after the deadlines had passed. Leftwich appeals, arguing the district court abused its discretion because he "demonstrated substantial evidence of diligence well beyond the average case . . . warranting leave to amend."

"A decision whether to allow a party to amend [his] complaint is left to the sound discretion of the district court and should be overruled only if there is an abuse of discretion." Popoalii v. Correctional Medical Servs., 512 F.3d 488, 497 (8th Cir. 2008). Here, the pretrial scheduling order set a deadline to amend the complaint of October 29, 2018. Leftwich did not file his motions to amend until January 2, 2019. "When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time." Freeman v. Busch, 349 F.3d 582, 589 (8th Cir. 2003); see Rule 16(b)(4); A.H., 891 F.3d at 730.

The magistrate judge's order recites that the parties jointly proposed that motions seeking to amend be filed and served by October 29, 2018. The scheduling order set forth the requirement of good cause to amend the scheduling order on the front page, and required the parties to "diligently pursue any further investigation or discovery to meet this deadline." Leftwich's reason for failing to add claims prior to the deadline was that he "only learned of the new customs and practices through fact depositions that were taken in December." The magistrate judge noted that Leftwich did not notice the depositions until November and "did not seek to take *any* fact depositions until weeks after the deadline for amending the pleadings had expired." The new information allegedly discovered during the depositions was available prior to the deadline -- the "fact witnesses were not obscure witnesses or witnesses later disclosed in written discovery; they were the individually-named parties and City and

-13-

County 30(b)(6) designees." The magistrate judge denied the motions to amend for failure to diligently pursue the information. The district court affirmed this ruling. As in In re Milk Products Antitrust Litigation, 195 F.3d 430, 437-38 (8th Cir. 1999), cert. denied, 529 U.S. 1038 (2000), the court did not abuse its substantial discretion.

The judgment of the district court is affirmed.

_____