# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3564
_____

Lisa M. Brabbit, as Trustee for the next of kin of Richard Bild

*Plaintiff - Appellee*

v.

Frank Capra, in his individual capacity as a Washington County Jail Sergeant; Stephanie Kaphing and Cayci Nelson, in their individual capacities as Washington County Jail nurses; Katelyn Schlief, Vince Scheele, and Chris Stellmach, in their individual capacities as Washington County Jail Correctional Officers; Roger Heinen, in his official capacity as the Washington County Jail Correctional Commander; and Washington County

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 15, 2022
Filed: February 3, 2023
[Published]
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

PER CURIAM.

Richard Bild, while detained at the Washington County Jail ("WCJ"), committed suicide by jumping from a height. Lisa M. Brabbit, as trustee for Bild's next of kin, brought this action under 42 U.S.C. § 1983 against Washington County and WCJ employees. The individual defendants appeal the district court's denial of qualified immunity. We have jurisdiction to review an interlocutory order denying qualified immunity to the extent it turns on "an abstract issue of law." Lockridge v. Bd. of Trustees of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc) (quoting Behrens v. Pelletier, 516 U.S. 299, 313 (1996)). Reviewing the district court's qualified immunity determination *de novo*, interpreting the complaint in favor of Bild, and assuming well-pleaded facts as true, we reverse. See Sterling v. Bd. of Trustees of the Univ. of Ark., 42 F.4th 901, 904 (8th Cir. 2022) (standard of review).

## I.     BACKGROUND

On June 26, 2018, Bild was arrested after crashing his vehicle into the lower level of his ex-wife's home. After arriving at WCJ, the transporting officer noted that Bild was cooperative, conversational, and coherent throughout the intake process. As part of the initial screening, Sergeant Frank Capra requested a nurse assess Bild's observable physical injuries. WCJ nurses Stephanie Kaphing and Cayci Nelson responded and treated Bild. At WCJ, nurses are the primary healthcare providers and make decisions regarding inmates' health care and watch status.

Nelson received non-specific information from the officers that Bild might have attempted suicide, so she placed Bild on High Observation status. Nelson documented the bases for her decision at intake as possible suicide attempt prior to arrest and denial of suicidal ideation/self-harm. While on High Observation, jailers observed Bild every 30 minutes and logged their observations. Later, Bild made suicidal comments during a jail call and when a correctional officer learned of these comments, Bild was searched and dressed in an anti-suicide gown. When Kaphing was informed about Bild's suicidal comments, she increased his suicide precaution level to Special Close Watch status and restricted Bild's access to items that could

be used for self-harm. Special Close Watch is the highest level of suicide precautions at WCJ, requiring observation of the inmate every 15 minutes.

WCJ procedures allow nurses to recommend inmate housing placements, but WCJ correctional officers make the ultimate determination as to placement. Correctional Officer Katelyn Schlief formally processed the intake of Bild, and after considering Bild's watch status and other information on the intake questionnaire, she assigned Bild to a bottom-floor cell in cellblock C400. C400 is designated to house inmates with mental health ailments, including an increased risk of suicide. Correctional officers can continuously observe inmates using either an observation desk outside C400 with several monitors or through C400's large windows. C400 is a two-story area containing six cells—three on the lower level and three on the upper tier. The stairway contains a solid brick wall on one side and a protective metal grate below the handrail on the other side. Near the pinnacle of the staircase and spanning the second-floor hallway is a handrail with a protective metal grate both below and above the handrail. Inmates housed on the bottom floor are not permitted on the second floor.

After Bild was taken to his cell, he interacted with other inmates until he went to bed for the night. Bild's cell was continuously monitored via camera as well as through the large windows by two officers assigned to the unit. The next morning, on June 27, 2018, Kaphing again assessed Bild's condition and needs and evaluated his watch status. Bild informed Kaphing that although he had some suicidal ideation, he did not have a specific plan to commit suicide. Kaphing noted that Bild had significant and unclear substance abuse/dependence and impulse control but that he was compliant with the treatment plan, cooperative, and communicative. Armed with this information, Kaphing maintained Bild on Special Close Watch status.

Bild's activities that afternoon were mostly unremarkable. He called his mother to ask about bail, watched television, interacted with other inmates, ate meals, and read. In the evening, Bild again called his mother to discuss bail, passing along contact information for a bail bonds company. Bild's mother told him that he

could not stay with her and her husband, but that Bild's sister could help him get into a drug treatment program.

On June 28, 2018, Bild ate breakfast, watched television, and helped clean. Bild also made a court appearance where his bond was set. Upon his return to WCJ, Bild interacted with other inmates, watched television, and used the telephone. He left a voicemail for his mother telling her his bail amount and spoke with a bail bonds company. That afternoon, Bild again met with Kaphing. Kaphing noted that Bild was pleasant, cooperative, and serious. Bild denied any desire to commit suicide. Bild stated that he wanted to pay his bail, go see his dad, and wear regular clothes. Based on this interaction, Kaphing changed Bild's watch status to High Observation, which allowed Bild to wear regular jail clothing and have access to other items.

Later that afternoon, Bild was informed by his mother that his family would not be able to post bond although his sister would support him if he sought drug treatment. Bild called his sister, who urged Bild to acknowledge his addiction issues. Bild responded by telling his sister that people were proving his worth by not helping him get out of jail and then hung up on her. Bild's sister contacted WCJ, expressing concerns her brother was suicidal. An officer called Bild's sister back, advised her that Bild was being monitored, and said he would review the phone recordings.

On the morning of June 29, 2018, Bild was captured on camera attempting to unscrew a mophead from a cleaning cart brought into C400 for inmate chores. An inmate intervened, recalling a prior comment Bild had made that he intended to place a mop in his mouth and jump to his death. Despite the intervention, the inmate never reported Bild's comment to WCJ personnel. Afterwards, Bild met with Kaphing. Bild reported that his family would not post bail and that he would likely die in jail. Bild also discussed his sister and placement at an alcohol and drug rehabilitation center. Kaphing noted that while Bild seemed less cheerful, he remained "forward thinking." Bild also requested anxiety medication. Bild stated that he did not intend to commit suicide and expressed a desire for daily meetings with Kaphing. Kaphing

-4-

did not believe Bild was actively suicidal but considered him at risk, so she maintained him on High Observation status.

Shortly after Bild returned to C400, Correctional Officers Vince Scheele and Chris Stellmach saw Bild walk up the stairs to the second floor. Scheele immediately intervened and ordered Bild to return to the bottom floor. Bild laughed and promptly complied. Neither Scheele nor Stellmach reported this incident because, although against the rules, going upstairs does not automatically trigger discipline since inmates have been known to climb the stairs for innocent reasons. At some point in the morning, Bild asked Stellmach why his mother's and sister's phone numbers were blocked and Stellmach informed Bild that the block had been placed at the request of his mother and sister. After receiving this information, Bild went to his room and was seen reading.

Bild ate lunch with other inmates and interacted with others in the dayroom. After sitting for a bit with his legs up and watching television, Bild suddenly stood up, ran past another inmate, removed his sandals, and proceeded quickly up the stairs toward the second floor with a pencil in his nose. Bild scaled the staircase banister and climbed outside of the protective barrier on the second floor. Fearing that Bild was planning to jump, an inmate yelled at Bild, "Don't do this!" Officer Scheele swiftly radioed for assistance and additional officers arrived as Bild moved along the outside of the barrier. Officers brought in first aid equipment and began moving a large gym mat into the dayroom. Three minutes after climbing over the protective barrier, Bild jumped headfirst, landing on the concrete floor. Despite immediate medical aid, Bild ultimately succumbed to his injuries. Between 2016 and June 2018, a total of four jump attempts occurred at WCJ.

Brabbit commenced this action alleging deliberate indifference to Bild's mental health needs and his risk of suicide in violation of the Eighth and Fourteenth Amendments. Brabbit also alleged a Monell claim against Washington County and Commander Roger Heinen in his official capacity. In denying the defendants'

summary judgment motion, the district court found there were material fact disputes. This interlocutory appeal followed.

## II.    DISCUSSION

Jails are neither required to provide suicide-proof institutions, nor must they ensure against suicide ever happening. Luckert v. Dodge Cnty., 684 F.3d 808, 818 (8th Cir. 2012) (quoting Rellergert v. Cape Girardeau Cnty., 924 F.2d 794, 796 (8th Cir. 1991)). In the context of jail suicides, qualified immunity is appropriate if the plaintiff fails to show the jailers acted with deliberate indifference to the risk of suicide. Id. at 817. To establish deliberate indifference, a plaintiff must show the jailer had actual knowledge of an inmate's "substantial" risk of suicide and did not take reasonable measures to abate the risk. Whitney v. City of St. Louis, 887 F.3d 857, 860 (8th Cir. 2018) (citation omitted). Resolution is not dependent on whether the jailers did all they could have done, but whether they violated the Constitution. Luckert, 684 F.3d at 818 (citation omitted). The constitutional and dispositive question here is whether the uncontroverted measures taken by WCJ were so inadequate as to be deliberately indifferent to Bild's risk of suicide.

Our focus in analyzing deliberate indifference is the time in which preventive measures were implemented by the jailers for a known suicide risk. Rellergert, 924 F.2d at 796. A review of the undisputed evidence demonstrates that the preventative measures taken by WCJ were not so inadequate as to constitute deliberate indifference. C400 was specifically designated to hold suicidal inmates for close observation. This area had cameras and large windows, allowing for constant observation of Bild. Bild was assigned to a cell on the bottom floor and prohibited from going upstairs. If he went upstairs, C400 contained a complete barrier on the second floor designed to prevent inmates from jumping. Even though Bild never expressed suicidal ideations to WCJ staff, given Bild's reported prior possible suicide attempt and his unclear mental health condition, WCJ reasonably undertook efforts to monitor and house Bild in an area designed to minimize his risk of suicide. Brabbit's contention that Bild should have been moved from C400 is of no

consequence because there is no evidence WCJ had a more suicide-proof cellblock available.  See Rellergert, 924 F.2d at 797 (stating that "[s]imply laying blame or fault and pointing out what might have been done is insufficient" to show deliberate indifference).  Likewise, neither the history of jump attempts at WCJ or the correctional officers' failure to report Bild's earlier effort to climb the stairs raises a material fact question given the few jump attempts that have occurred at WCJ over the course of several years and that inmates climb C400's stairs for innocent reasons.

Turning to the nurses' conduct, Bild's condition was assessed and evaluated each day for changes in his demeanor or mental health.  Under our precedent, Kaphing's and Nelson's decisions not to seek specialized mental health treatment or maintain Bild on Special Close Watch status do not demonstrate deliberate indifference.  Cf. Luckert, 684 F.3d at 813, 818 (finding a jail nurse was not deliberately indifferent when she visited an inmate twice, the inmate informed her he was depressed but not suicidal, and she downgraded the inmate's suicide watch status); Yellow Horse v. Pennington Cnty., 225 F.3d 923, 927-28 (8th Cir. 2000) (rejecting the argument that an officer was deliberately indifferent simply because she did not consult a mental health professional before removing an inmate from suicide watch).  While Brabbit now seeks to assert a claim that Kaphing and Nelson were deliberately indifferent to Bild's general mental health needs (apart from his suicide risk), Brabbit never asserted such a claim in her amended complaint or in the summary judgment proceedings below.

Lastly, under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), Washington County may be liable under § 1983 only if the constitutional violation resulted from an official municipal policy.  Whitney, 887 F.3d at 860-61 (citation omitted).  The same standard applies to Brabbit's claim against Heinen in his official capacity.  See Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (citation omitted).  Because there is no cognizable constitutional violation, there is no basis for Monell liability.  See Whitney, 887 F.3d at 861 (collecting cases).

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's decision and remand for entry of judgment in favor of the defendants.

_____