# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2052
_____

Jonathan Alexander Truong

*Plaintiff - Appellant*

v.

Ahmad Aladin Hassan, in his individual capacity; Metropolitan Council, a public corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 9, 2016
Filed: July 14, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Bus driver Ahmad Aladin Hassan kicked passenger Jonathan Alexander Truong off of a Minneapolis/St. Paul area Metro Transit bus for failing to pay the bus fare. When Truong responded by jumping in front of the bus and onto the bus's front bumper, Hassan allowed several unruly passengers to exit the bus and physically remove Truong. Hassan also accelerated and braked multiple times in an attempt to

knock Truong off of the bus or to scare him away from the front the bus. As a result of these incidents, Truong suffered a bruised thigh, a bruised cheek, and scrapes on both of his hands. He brought a 42 U.S.C. § 1983 suit against Hassan and the Metropolitan Council. The district court[1] granted summary judgment to Hassan and the Metropolitan Council and dismissed the complaint. Truong appeals the grant of summary judgment as to Hassan, and we affirm.

I.

On the night of October 7, 2007, Truong boarded a Metro Transit bus driven by Hassan.[2] Hassan recognized Truong as a frequent rider and believed, based on previous experiences, that Truong would try to ride the bus without paying. According to Hassan, Truong had ridden the bus earlier in the day without paying. As Truong attempted to board, Hassan ordered Truong to remain off of the bus, but Truong put his hand in the bus's door and stated that he would pay. Hassan told Truong to pay $3.00 instead of the normal $1.50 to cover the cost of his morning's bus ride. Truong repeatedly stated that he was going to pay as he shuffled through the bags he was carrying. Truong suffers from obsessive-compulsive disorder and claims that he was repeatedly wiping his hands while shuffling through his bags.

After Truong had remained on the bus for about one minute without producing payment or a bus pass, Hassan repeatedly ordered Truong to exit the bus, but Truong

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]As we are reviewing a grant of summary judgment, we construe the facts in the light most favorable to Truong. Sitzes v. City of W. Memphis, Ark., 606 F.3d 461, 465 (8th Cir. 2010). This case is unique in that much of the incident was recorded on the bus's video system. See Scott v. Harris, 550 U.S. 372, 380 (2007) (refusing to adopt plaintiff's version of facts when that version was contradicted by the video evidence).

refused, stating he would pay for the bus ride. An impatient Hassan then stood up, grabbed Truong's bags, and threw them from the bus. Hassan then grabbed Truong by the shoulders and pushed him out of the bus door, following with a kick toward Truong's back. Truong states that he then jumped onto the front of the bus. Hassan then accelerated and braked the bus at least three times. A group of passengers began laughing, and several stood from their seats and walked toward the front of the bus. Then someone in the group asked Hassan if he could "whoop [Truong's] ass?" Hassan responded, "Don't whoop his ass, but if you can drag him off of there, that would be great." Hassan opened the bus door and allowed the group to exit the bus. Truong states that the group grabbed him, threw him to the pavement, and punched him. After about 20 seconds, the group reentered the bus, but Truong again blocked it from moving by either jumping on the bus or in front of the bus. For a second time, Hassan allowed several passengers to exit the bus to confront Truong.

Nearby police officers noticed the incident and came to investigate. The entire incident from Truong first boarding the bus until police officers interceded spanned less than nine minutes. Officers took Truong to a nearby hospital where he received pain medication, a bandage for his hands, and a tetanus shot. Truong claims that he suffered a bruised thigh from being struck by the bus's bumper, a bruised cheek from being struck by one of the passengers, and scrapes to his hands from being thrown to the ground by the passengers.

Truong brought suit against Hassan and the Metropolitan Council. The district court granted summary judgment to the defendants, holding, as relevant to this appeal, Hassan was entitled to qualified immunity because his actions did not rise to a constitutional violation because the actions were not conscience-shocking.[3]  In

---

[3]The district court also granted summary judgment on Truong's Fourth Amendment excessive force claim, his state law claims, and his vicarious liability claims against the Metropolitan Council. Truong has not appealed the district court's grant of summary judgment on these claims.

reaching this conclusion, the district court applied the intent-to-harm standard to determine whether Hassan's actions were conscience-shocking because, the court found, the situation was "rapidly evolving" and "fluid." Truong appeals the district court's grant of qualified immunity to Hassan.

II.

We review the district court's summary judgment decision regarding qualified immunity de novo, viewing the facts in the light most favorable to the nonmoving party. McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Qualified immunity shields a government official from liability and the burdens of litigation unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Courts have discretion to decide which part of the inquiry to address first. Id. at 236.

The only constitutional claim remaining in this action is whether Hassan's actions resulted in a substantive due process violation under the Fourteenth Amendment.[4] The Fourteenth Amendment's due process clause provides that "[n]o

_____

[4]Truong appears to argue for application of the Fifth Amendment's due process protections in addition to the Fourteenth Amendment. The due process clause of the Fifth Amendment applies only to the federal government. See Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) (citing Dusenbery v. United States,

State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998)).

To reach this second element, we have explained that the alleged substantive due process violations must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (quoting In re Scott Cnty. Master Docket, 672 F. Supp. 1152, 1166 (D. Minn. 1987)). This requires the court to first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. Lewis, 523 U.S. at 848-49. The lower deliberate indifference standard "is sensibly employed only when actual deliberation is practical." Id. at 851-53 (differentiating between substantive due process cases in which the deliberate-indifference standard applies because prison officials have the benefit of time to make unhurried judgments regarding inmate welfare, and cases where a higher standard of intent to harm applies because certain unforseen circumstances demand instant judgment); see Wilson v. Lawrence Cnty., 260 F.3d 946, 957 (8th Cir. 2001) (concluding that reckless standard was appropriate where officers conducting post-arrest investigation had ability to make unhurried judgments). By contrast, the intent-to-harm standard most clearly applies "in rapidly

534 U.S. 161, 167 (2002)).

-5-

evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." Neal v. St. Louis Cnty. Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." Terrell v. Larson, 396 F.3d 975, 981 (8th Cir. 2005); see also Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992).

The district court held that the intent-to-harm standard was the appropriate standard to apply in this case, concluding the situation (1) was "rapidly evolving" and "fluid," (2) involved the potential for physical harm to others, and (3) required Hassan to respond to competing public obligations of the safety of passengers as well as maintaining the bus schedule. Truong claims the district court erred in its conclusion that the intent-to-harm standard is appropriate, arguing Hassan always had the ability to deliberate about his actions making the deliberate-indifference standard appropriate. We agree with the district court's decision to apply the intent-to-harm standard.

Those cases where the deliberate indifference standard has been found to be appropriate involve situations where the defendant had the luxury of time to consider the decisions made. No such time was available here. The incident quickly escalated from Truong boarding the bus without permission, to delaying the payment of his fare or presentation of his bus card, to either jumping onto the front of the bus or into the bus's path after Hassan had removed him from the bus. We find this situation is more akin to our decision in Golden ex rel. Balch v. Anders, 324 F.3d 650 (8th Cir. 2003), wherein we interpreted Lewis in the context of a claim brought against a high school principal who forcefully restrained a sixth-grade student after he violently kicked a vending machine and resisted efforts of a teacher to settle him down. We reasoned that while the principal "was in neither a high-speed chase nor an exchange of gunfire," he was required to make an "instant judgment" about how to quell the immediate danger posed by the student. Id. at 654 (quoting Lewis, 523 U.S. at 853).

-6-

We held that the student could establish a violation of substantive due process only by showing that the principal intended to harm the student.  Id.

Hassan was required to make instant judgments about how to handle a passenger who he knew to ride the bus without paying, refused to exit the bus, and who, after Hassan removed him from the bus, responded by jumping onto the front of the bus as it attempted to drive away.  Hassan had to respond quickly to the changing circumstances of his encounter with Truong.  Calm and reflective deliberations about his actions during this nine-minute encounter were not practical, thus we agree with the district court's application of the intent-to-harm standard.

Next, Truong argues that, even if the intent-to-harm standard is appropriate, the district court erred in concluding that there was insufficient evidence Hassan intended to hurt Truong for purposes of the substantive due process analysis.  Hassan committed three distinct actions against Truong:  (1) grabbing Truong by his shoulders and pushing him off of the bus, followed by a kick in Truong's direction that may have made contact with Truong's back, (2) starting and stopping the bus in an effort to knock Truong from the front of the bus, and (3) allowing the group of passengers to exit the bus in order to confront Truong and to remove him from the front of the bus.  To reach the level of a constitutional violation, we must find as a matter of law that Hassan's actions were "inspired by malice or sadism."  See Moran, 296 F.3d at 647.

Upon reviewing the tape of the incident, it is clear Hassan's objective in all of his actions was to remove Truong from the bus and to continue driving his route.  He was not acting in a manner to maliciously or sadistically cause Truong physical harm, and Hassan's actions were related to his legitimate responsibilities of driving the bus.  Cf. Helseth v. Burch, 258 F.3d 867, 870 (8th Cir. 2001) (holding "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking the conscience, necessary for a due process violation"

(quoting <u>Lewis</u>, 523 U.S. at 836); <u>see also</u> Minn. State. § 609.06, Subdiv. (1)(d)(8) (authorizing use of reasonable force to expel bus passengers who refuse to obey lawful requirements for conduct of passengers). While with time to deliberate Hassan could have perhaps developed and selected other options in interacting with Truong, we conclude that Truong has failed to show that Hassan's actions amounted to a substantive due process violation, and the district court properly granted summary judgment to Hassan.

III.

Accordingly, we affirm the district court's grant of summary judgment.

_____