# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-3448

_____

Sean Stearns

*Plaintiff - Appellant*

v.

Don Wagner, Board of Police Commissioners of Kansas City/ Commissioner

*Defendant*

Cathy Dean, Commissioner; Mark Tolbert, Commissioner; Quinton Donald Lucas, Mayor/ Board Member

*Defendants - Appellees*

Richard Smith, Police Chief of Kansas City Missouri; David V. Kenner, Board Member; City of Kansas City, Missouri

*Defendant*s

Dawn Cramer, Commissioner; Jeffrey Spire, Trooper

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 26, 2024
Filed: December 4, 2024

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Sean Stearns appeals the dismissal of his federal and Missouri civil rights claims on summary judgment. We affirm.

## I. Background

After the death of George Floyd, several large-scale protests occurred in Kansas City, Missouri. On May 30, 2020, the Kansas City Police Department ("KCPD") requested assistance from the Missouri State Highway Patrol ("MSHP") to help keep the peace. That evening, the protest became violent. Protestors threw water bottles at police, broke store and car windows, looted stores, and set fire to a police car. Law enforcement used CS (tear gas) canisters to disperse protestors. Some protestors picked up the canisters and threw them back at the officers.

That evening, MSHP Sergeant Jeffrey Spire served as the "grenadier" for a squad of state troopers. At various points between 10:10 p.m. and 12:34 a.m. Sergeant Spire deployed CS and white smoke hand grenades, bean bag rounds, and CS and white smoke projectiles.

This appeal concerns a series of events that occurred between 11:30 p.m. and midnight. The parties disagree on the crowd's demeanor at that time, but, at a minimum, they agree that Sergeant Spire and his unit performed crowd control by deploying handheld smoke grenades. Stearns admits that law enforcement "effectively and safely" used these handheld munitions to "start[] to control the protestors." Because of these efforts, according to Stearns, "the crowd had already begun dispersing." Around 11:47 p.m., once "the crowd was outside throwing range," Sergeant Spire skipped two projectiles off the ground towards the retreating crowd. Though the parties dispute whether Sergeant Spire should have used this

"skipping" technique, they agree that Sergeant Spire "did not fire at a specific person, but indiscriminately fired into a group of people."

Stearns and his girlfriend participated in the protests that day. They first arrived in the early afternoon, left for dinner, and returned around 9:00 or 10:00 p.m. Around 11:30 p.m., Sergeant Spire and his unit attempted to disperse the crowd that Stearns and his girlfriend had joined. As the crowd began to retreat, Stearns's girlfriend was kneed by a fellow protestor and sustained a head injury. Around 11:45 p.m., as Stearns attended to his girlfriend, an object struck his left eye and caused extensive damage that eventually resulted in a complete loss of vision in that eye. Stearns contends that this object was one of the projectile shells that Sergeant Spire had skipped off the ground.

Stearns sued Sergeant Spire under 42 U.S.C. § 1983 for unlawful retaliation in violation of the First Amendment and for excessive use of force in violation of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. He also sued Sergeant Spire under Missouri law and brought a *Monell* claim against the Board of Police Commissioners. The district court[1] granted summary judgment for the defendants.

## II. Discussion

Stearns appeals the district court's grant of summary judgment. He argues that Sergeant Spire was not entitled to qualified immunity and that the district court erred in finding that he could not establish a *Monell* claim. He also argues that the district court erred in dismissing his claims under Missouri law.

We review a district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party—here, Stearns—and

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

giving him the "benefit of all reasonable inferences." *See De Mian v. City of St. Louis, Mo.*, 86 F.4th 1179, 1182 (8th Cir. 2023). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We first address whether Sergeant Spire is entitled to qualified immunity on Stearns's § 1983 claims. Stearns alleges that Sergeant Spire retaliated against him in violation of the First Amendment and used excessive force in violation of the Fourth and Fourteenth Amendments. "Qualified immunity shields a public official from suit for civil damages when his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (internal quotation omitted). Therefore, qualified immunity applies unless Sergeant Spire violated a constitutional right that was clearly established at the time of violation. *See id.*

To prove his First Amendment retaliation claim, Stearns must demonstrate (1) that he engaged in a protected First Amendment activity, (2) that Sergeant Spire "took an adverse action that would chill a person of ordinary firmness from continuing in the protected activity," and (3) that retaliatory animus was a "but-for cause" of his injury. *See Molina v. City of St. Louis, Mo.*, 59 F. 4th 334, 338 (8th Cir. 2023) (internal quotations and alterations omitted). "The causal connection is generally a jury question unless the question is so free from doubt as to justify taking it from the jury." *De Mian*, 86 F.4th at 1182 (internal quotation and alterations omitted).

Because "more than a temporal connection is required to present a genuine factual issue on retaliation," "a plaintiff must demonstrate that [he] was singled out due to [his] protected expression, whether as an individual or as part of a group." *Id.* For example, multiple reporters were "singled out" when police deployed tear gas at them but not at the other people in the area. *See Quraishi v. St. Charles Cnty, Mo.*, 986 F.3d 831, 838 (8th Cir. 2021). And, when no one else was in the area and the protest had been dispersed an hour earlier, a group of eleven people was singled out

-4-

by police who mocked and deployed tear gas at them as they attempted to peacefully depart. *See Green v. City of St. Louis, Mo.*, 52 F.4th 734, 740 (8th Cir. 2022). But an officer did not "single out" anyone when he used pepper spray indiscriminately as a crowd control technique. *See Aldridge v. City of St. Louis, Mo.*, 75 F.4th 895, 900 (8th Cir. 2023) ("One cannot simultaneously single out the appellants and 'indiscriminately' spray the crowd."); *see also De Mian*, 86 F.4th at 1182 ("indistinguishable from *Aldridge*"). And officers did not single out anyone when they deployed tear gas against a small group who had left a violent protest to "reassemble" peacefully in a non-protestor's yard. *See Molina*, 59 F.4th at 340-41 (reasoning that reasonable officers might not "have known the gathering was a protected assembly, particularly when they were dodging rocks and bottles just a few minutes earlier").

Here, Stearns's First Amendment retaliation claim fails because, viewing the record in the light most favorable to him, he fails to demonstrate a causal connection between his injury and a retaliatory animus. Unlike the police in *Quraishi*, Sergeant Spire did not single out a particular group of people. And unlike the relatively small group in *Green* who were attempting to peacefully depart the scene an hour after a protest had ended, Stearns was in the midst of a crowd where—he admits—only minutes before officers were required to deploy "handheld munitions" to "effectively and safely start[] to control the protestors." This case is closer to *Molina*, where officers "were dodging rocks and bottles just a few minutes earlier" than to *Green*, where the protest had dispersed an hour earlier. *See Molina*, 59 F.4th at 341. And, like the officers in *Aldridge* and *De Mian*, Stearns concedes that Sergeant Spire "did not fire at a specific person, but indiscriminately fired into a group of people." "One cannot simultaneously single out the appellants and 'indiscriminately' spray the crowd." *Aldridge*, 75 F.4th at 900. Thus, Stearns has failed to allege that Seargent Spire violated a constitutional right. Sergeant Spire is therefore entitled to qualified immunity on Stearns's First Amendment retaliation claim.

Stearns also appeals the dismissal of his excessive force claim under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment. With respect to his Fourth Amendment claim, Stearns fails to "provide a meaningful explanation of the argument" and neglects any "citation to relevant authority." *See Waters v. Madson*, 921 F.3d 725, 744 (8th Cir. 2019). Therefore, his Fourth Amendment claim is waived.

As to his Fourteenth Amendment excessive force claim, to prove a violation of substantive due process, Stearns "must show (1) that [Sergeant Spire] violated one or more fundamental constitutional rights, and (2) that the conduct of [Sergeant Spire] was shocking to the contemporary conscience." *See Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016). "Proof of intent to harm is usually required," though, "in some cases, proof of deliberate indifference" may satisfy the standard. *Id.* "The lower deliberate indifference standard is sensibly employed only when actual deliberation is practical." *Id.* (internal quotation omitted) (citing cases where "prison officials have the benefit of time to make unhurried judgments regarding inmate welfare"). "Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise" to the "conscience-shocking level." *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012).

Here, Stearns argues that Sergeant Spire's deployment of projectile shells after the crowd was beyond throwing distance was "a brutal and inhumane abuse of official power." But—even assuming that Sergeant Spire used crowd control measures longer and more aggressively than was required[2]—there is no evidence that Sergeant Spire intended harm. And the lower "deliberate indifference" standard does not apply because Sergeant Spire lacked "the benefit of time to make [an] unhurried judgment[]." *See Truong*, 829 F.3d at 631. Altogether, Sergeant Spire's actions fall far short of shocking the conscience. Therefore, Stearns has not shown

---

[2]We need not decide whether Sergeant Spire was reasonable to deploy the projectile shells and thus do not address the defendants' contentions that the protestors attacked the police with firework mortars, requiring crowd control from greater distances.

a substantive due process violation and Sergeant Spire is entitled to qualified immunity on Stearns's Fourteenth Amendment claim.

We next address the denial of Stearns's *Monell* claim against the Police Board. "[A]bsent a constitutional violation" by an employee, "there can be no § 1983 or *Monell* liability." *Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 861 (8th Cir. 2018). Because Stearns's constitutional rights were not violated, his *Monell* claim fails.

Finally, we address the dismissal of Stearns's state law claims. After dismissing the federal claims, the district court dismissed all state law claims without prejudice. We review a district court's decision whether to exercise supplemental jurisdiction for abuse of discretion. *See Aldridge*, 75 F.4th at 901. "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (alterations omitted). Here, Stearns points to no reason to second guess the district court's decision, and we can detect no abuse of discretion.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.
_____