# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1375

_____

Monica Perkins

*Plaintiff - Appellant*

v.

City of Des Moines; Dana Wingert, Individually and in his capacity as Chief of the Des Moines Police Department; Rodell Nydam, Individually and in his capacity as Police Officer of the Des Moines Police Department; Scott Newman, Individually and in his capacity as Police Officer of the Des Moines Police Department; Jason Tart, Individually and in his capacity as Deputy of the Polk County Sheriff's Office

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: May 13, 2025
Filed: March 5, 2026

_____

Before BENTON, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

This case centers on the use of force deployed by police around the time of a May 2020 protest-turned-riot in Des Moines, Iowa. Deputy Jason Tart was carrying

out orders to clear people from the area after rioters had looted a mall. Deputy Tart shot Monica Perkins's hand with a less-lethal impact round while she stood outside her vehicle on a nearby road arguing with another driver. Perkins sued the City of Des Moines and police officials, including Deputy Tart. The district court[1] granted summary judgment on all federal and state claims in favor of the government officials. Perkins appeals. We affirm.

## I. Background

At the end of May 2020, following the death of George Floyd in Minneapolis, the City of Des Moines, Iowa experienced consecutive days of protests that turned into rioting. On May 31, protesters gathered in the parking lot of Merle Hay Mall. Some of those protesting eventually started rioting and looting businesses in the mall. A special team of officers — consisting of Sergeant Rodell Nydam as commanding officer, Officer Scott Newman as team leader, and Deputy Tart as the team's less-lethal munitions expert — was deployed to assist other officers with stopping the chaos and controlling the crowd.

When the team arrived at the mall, police command staff informed the team that dispersal orders had been given but the crowd continued to grow after the orders. Command staff instructed the team to clear the area and authorized it to use less-lethal force. The team had several types of less-lethal munitions, including tear gas and impact rounds. An impact round is a type of less-lethal round that is projected with a sponge tip that strikes the target.

The team used a Bearcat, an armored vehicle with a turret on the roof in which an officer can stand and view the surrounding area. The team drove around the mall parking lot with Deputy Tart deploying less-lethal munitions from the Bearcat's turret. The team first cleared the area near the mall, then moved to other parts of the

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

parking lot closer to Merle Hay Road, the nearby four-lane road. As the team carried out its task, some people crossed Merle Hay Road to other parking lots rather than leaving the area entirely. Vehicles continued driving through the parking lot and steady traffic continued on Merle Hay Road. The team continued to patrol the parking lot to clear the people that remained and to discourage people from returning.

Meanwhile, Perkins and her daughter attended a vigil for George Floyd elsewhere in Des Moines. After the vigil, they decided to go to a restaurant on Merle Hay Road. Upon driving into the area, they noticed large crowds. Perkins's daughter, who was driving, stated at the time that people were "looting," "tearin' up Merle Hay," and "trying to rob the bank." The two also observed or heard tear gas being deployed and noted a police SWAT presence. When they arrived at the restaurant, they found it was closing because of violence in the area. They then returned to Merle Hay Road and drove south, eventually stopping at an intersection of Merle Hay Road and an entrance to the Merle Hay Mall parking lot. At the intersection, they interacted with a police officer, whose vehicle was blocking an entrance to the mall parking lot.

At that time, an argument arose between Perkins and another driver. Perkins and her daughter appealed to the officer, claiming the other driver was making racist comments. The officer instructed them, as revealed by the audio from dashcam footage, not to let their dog out and to get in their car.[2] Both vehicles drove to the next intersection, where Perkins's daughter stopped in the far-right lane closest to the Merle Hay Mall parking lot. The other driver stopped in the middle lane. Perkins's daughter then got out of her vehicle and began recording the other driver and commenting about him.

---

[2]Perkins denies the officer ordered her and her daughter to get back in their car, claiming the officer told them to move along.

Around this time, the Bearcat team was moving north through the Merle Hay Mall parking lot near Merle Hay Road toward a group of individuals standing in the parking lot. The group fled from the Bearcat, scattering throughout the parking lot and surrounding area. Some individuals ran through the grass between the parking lot and Merle Hay Road, eventually crossing the road and weaving between stopped traffic. As the Bearcat team continued in the direction of the fleeing individuals, Deputy Tart deployed a tear-gas cannister in the vicinity of a protester holding a sign and kneeling near the parking lot. After the tear-gas cannister was deployed, Deputy Tart fired a single impact round at Perkins. The round struck Perkins in her left hand, breaking her finger.

When Deputy Tart fired, Perkins was approximately sixty to seventy-five feet away from him and standing on the road outside her daughter's vehicle. As Perkins describes the situation, she was verbally confronting another driver, walking back and forth between her daughter's vehicle and the other driver's vehicle. She claims she was returning to her daughter's vehicle but then turned to address the other driver again when she was struck. After she was hit, Perkins picked up her phone, got back in her daughter's vehicle, and drove away. The Bearcat team, meanwhile, continued patrolling and clearing the area.

Perkins eventually sued the City of Des Moines, its Chief of Police, Deputy Tart, Sergeant Nydam, and Officer Newman, alleging federal and state claims. Defendants moved for summary judgment on all claims, which the district court granted.

Relevant for this appeal are the district court's rejections of Perkins's excessive force claim under the Fourth Amendment against Deputy Tart, her substantive due process claim under the Fourteenth Amendment against Deputy Tart, and her failure-to-intervene claim under the Fourth Amendment against Sergeant Nydam and Officer Newman. The district court determined that Perkins was not "seized" for purposes of the Fourth Amendment, and even if she was, Deputy Tart was entitled to qualified immunity. The district court also determined

Deputy Tart's conduct did not shock the conscience as necessary to show a substantive due process violation, and even if it did, he was entitled to qualified immunity. Lastly, the court granted summary judgment in favor of Sergeant Nydam and Officer Newman because there was no underlying constitutional violation and therefore Perkins could not prevail under her failure-to-intervene theory. On appeal, Perkins argues the district court erred in granting summary judgment on these claims. She contends Deputy Tart's use of force was an unreasonable seizure under the Fourth Amendment, Deputy Tart's conduct shocked the conscience in violation of the Fourteenth Amendment, and Sergeant Nydam and Officer Newman failed to intervene in Deputy Tart's unconstitutional conduct.

## II. Analysis

We review de novo a district court's grant of summary judgment based on qualified immunity. *De Mian v. City of St. Louis*, 86 F.4th 1179, 1182 (8th Cir. 2023). To overcome qualified immunity, Perkins "must show that the officers violated a constitutional right, and that the unlawfulness of their conduct was clearly established at the time." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).[3]

## A. Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. This constitutional protection against unreasonable seizures includes protection against the use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Burbridge v. City of St. Louis*, 2 F.4th

---

[3]Though Perkins argues that the doctrine of qualified immunity should be overturned, we are bound by Supreme Court and Eighth Circuit precedent. *Graham v. Barnette*, 5 F.4th 872, 880 n.3 (8th Cir. 2021).

774, 780 (8th Cir. 2021). Whether Deputy Tart violated the Fourth Amendment in this situation presents two questions: (1) whether he seized Perkins within the meaning of the Fourth Amendment; and (2) if he did, whether the seizure was unreasonable.

Our analysis begins and ends with the "threshold question" of whether Deputy Tart "seized" Perkins "within the meaning of the Fourth Amendment." *Dundon*, 85 F.4th at 1255. Deputy Tart did not seize Perkins, so her Fourth Amendment claim fails.

In coming to this conclusion, we are guided by the Supreme Court's decision in *Torres v. Madrid*, 141 S. Ct. 989 (2021). There, the Court addressed the question of "whether the application of physical force is a seizure if the force, despite hitting its target, fails to stop the person." *Id.* at 995. The Court answered that question in the affirmative, "hold[ing] that the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Id.* at 1003. Focusing on the requirement of intent to restrain included in the Court's interpretation of seizure, the Court stressed that "[a]ccidental force will not qualify." *Id.* at 998. "Nor will force intentionally applied for some other purpose satisfy this rule." *Id.* The "appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain." *Id.* (emphasis in original).

When considering the "reasonableness of police force," we analyze the totality of the circumstances. *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025). So, in determining whether Deputy Tart applied physical force to Perkins with an intent to restrain, we look at all facts and circumstances surrounding the incident. *See id.* *Cf. Torres*, 141 S. Ct. at 998 ("[T]he amount of force remains pertinent in assessing the objective intent to restrain[.]").

Deputy Tart's conduct at issue here did not "*objectively* manifest[] an intent to restrain" Perkins. *See Torres*, 141 S. Ct. at 998. Instead, the totality of circumstances demonstrates "force intentionally applied for some other purpose."

*See id.* Law enforcement had given dispersal orders to those in the area. The Bearcat team had been dispersing people under specific orders to clear the area experiencing a riot and to use less-lethal force like tear gas and impact rounds. The team was not pursuing individuals to arrest them; it was maneuvering throughout the parking lot to disperse the crowd and to establish control of the area. The video footage shows there were groups of individuals running through the parking lot, near the Bearcat, and across the busy road. Deputy Tart was strategically deploying less-lethal force to disperse those in the area when he deployed one less-lethal impact round at Perkins, striking her hand, while she was approximately sixty to seventy-five feet away standing in the middle of a busy four-lane road. Perkins's counsel conceded at oral argument that this did not constitute deadly force. Also, after being struck, Perkins picked up her phone and left without further interaction with Deputy Tart or any other officers. Perkins has failed to affirmatively satisfy the "threshold question" of whether she was "seized within the meaning of the Fourth Amendment." *Dundon*, 85 F.4th at 1255. Thus, Perkins has failed to show that Deputy Tart violated a constitutional right, and he is therefore entitled to qualified immunity on her Fourth Amendment excessive force claim.

## B. Substantive Due Process

Perkins also asserts a Fourteenth Amendment excessive force claim against Deputy Tart, alleging he violated her substantive due process rights. "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (quoting *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007)). "'Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise' to the 'conscience-shocking level.'" *Stearns v. Wagner*, 122 F.4th 699, 704 (8th Cir. 2024) (quoting *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012)).

For a Fourteenth Amendment excessive force claim, "[p]roof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." *Truong*, 829 F.3d at 631. The lower standard of deliberate indifference applies only when actual deliberation is practical, like when officers can make unhurried judgments. *See id.* Here, Deputy Tart faced an evolving situation with protesters and rioters running throughout the area as he was tasked to disperse them. The lower deliberate indifference standard does not apply because Deputy Tart "lacked 'the benefit of time to make an unhurried judgment.'" *See Stearns*, 122 F.4th at 704 (brackets omitted) (quoting *Truong*, 829 F.3d at 631).

Reviewing her claim under the higher standard, we agree with the district court that Perkins failed to set forth sufficient evidence showing Deputy Tart acted with the requisite intent to harm. Deputy Tart was operating under orders to disperse individuals from the area. He was authorized to use less-lethal force to do so, and the firing of one less-lethal impact round at Perkins's hand in these circumstances was not a "brutal and inhumane abuse of official power ris[ing]' to the 'conscience-shocking level.'" *Id.* (quoting *White*, 696 F.3d at 757–58). Perkins has failed to show a substantive due process violation, and Deputy Tart is therefore entitled to qualified immunity on her Fourteenth Amendment excessive force claim.

### C.  Failure to Intervene

Lastly, Perkins argues Sergeant Nydam and Officer Newman violated the Fourth Amendment because they knew of and had the opportunity to stop the use of force against her. An officer can violate the Fourth Amendment by failing to stop an unconstitutional use of excessive force. *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). But because Deputy Tart did not commit a constitutional violation, Perkins cannot prevail on her failure-to-intervene claim. *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018). Therefore, Sergeant Nydam and Officer Newman are entitled to summary judgment.

-8-

## III.  Conclusion

For the foregoing reasons, we affirm.

_____